Filed 6/1/22  P. v. Vazquez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JOSE ALBERTO ALCANTAR VAZQUEZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B302686<br>(Super. Ct. No. CR44630)<br>(Ventura County) |

In 1999, appellant Jose Alberto Alcantar Vazquez was convicted of first-degree murder (Pen. Code,[1] §§ 187, subd. (a), 189) and other crimes.  The jury also found true special circumstance allegations that the murder occurred during the commission of an attempted kidnapping and burglary (§ 190.2, subds. (a)(17)(B) & (G)).  In 2019, appellant filed a petition for resentencing under section 1170.95.  In denying the petition

---

[1] All undesignated statutory references are to the Penal Code.

following an evidentiary hearing, the trial court found appellant was ineligible for relief under section 1170.95 because the evidence, when viewed in light of the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), was sufficient to support the jury's true findings on the felony-murder special circumstance allegations, i.e., that appellant was a major participant in the burglary and attempted kidnapping and acted with reckless indifference to human life. Appellant contends among other things that the court erred in failing to apply the beyond-a-reasonable-doubt standard of proof in making its findings, as set forth in subdivision (d) of section 1170.95. We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

Appellant married Monica Donahoo in June of 1997. They had dated each other when they were teenagers, but had broken up because their parents did not approve of the relationship. In the intervening years, Donahoo married a professional gambler several years her senior, who died of cancer in 1996. She inherited his house, a large sum of cash, and his interest in the Players Club card room, a poker parlor.

After her first husband's death, but before her marriage to appellant, Donahoo became enamored with Felipe Arambula, the victim in this case. Arambula was married and had three children. He was the part owner in a Mexican restaurant, and employees of the restaurant reported that Donahoo often visited

---

[2] The relevant facts are recited from our prior opinion affirming the judgment against appellant on direct appeal. (*People v. Vazquez* (Apr. 24, 2001, B135076) [nonpub. opn.].) We previously granted appellant's request for judicial notice of this opinion and the trial transcripts in the prior appeal.

2

and brought Arambula gifts.  Arambula instructed his employees not to tell Donahoo that he was married.  In March of 1997, Donahoo gave Arambula two cashiers checks for $25,000 apiece, which he later used to purchase a home for his family.  She also gave him a power of attorney to sell a Lincoln Town Car, which he drove for several months and eventually sold for $10,000.

Manny Vasquez (no relation to appellant) worked at Jiffy Lube and serviced appellant's car on May 3, 1997.  During the summer of 1997, Vasquez asked his friend Erick Gonzalez to help him kidnap someone.  He told Gonzalez that he had been hired by a person who worked at or owned a card club, and that the intended victim owed that person a lot of money.  Vasquez showed Gonzalez a box containing rope, tape and handcuffs, and said they were going to take the guy to "Jose's" house.  He showed Gonzalez a gun and said he got it from "Jose."  Vasquez later introduced Gonzalez to appellant, who asked Gonzalez where he could buy guns.  Gonzalez told appellant he might be able to get guns for him, but ultimately decided not to participate in the kidnapping.

Vasquez asked another friend, Angel Gutierrez, if he would be interested in helping Vasquez kidnap somebody.  Vasquez told Gutierrez that the man who was hiring him owned a card room. He took Gutierrez to the house where appellant and Donahoo lived, but appellant was not home.  Vasquez also took Gutierrez to the restaurant owned by Arambula and told him the owner was the man he planned to kidnap.  Gutierrez declined to participate in the kidnapping.  Vasquez later introduced him to appellant in the parking lot of a Toys R Us, and told appellant, "[T]his is the guy I tried to hire."

Vasquez also discussed his plan with a third friend, Richard Garcia. Vasquez did not ask Garcia to help him, but told him that the owner of the Players Club was going to pay him to do a kidnapping. Vasquez told Garcia that he got a gun from the man who owned the club.

On June 13, 1998, Vasquez spent the afternoon and early evening with Gonzalez, Gutierrez and Garcia. David Hampton was also with the group. Vasquez showed his friends a gun and a stun gun. At about 9:00 p.m., Vasquez and Hampton left the group, saying they were going to "handle this thing."

Vasquez and Hampton entered Arambula's home at about 9:45 p.m., armed with a nine-millimeter Beretta and a stun gun. Arambula had not yet returned home, but his wife was putting their children to bed. Vasquez ordered Arambula's wife to remain in one of the bedrooms and said they would not hurt her. Vasquez told her that Arambula owed $100,000, and that they were there for the money. Arambula's wife did not see Hampton, but heard someone talking on the phone in another room of the house. She believed that a third person was present.

Arambula came home shortly after 10:00 p.m., carrying over $2,000 in cash receipts from his restaurant. His wife heard a struggle and the buzzing sound of a stun gun, followed by several gunshots. Vasquez and Hampton fled the house. Arambula had been shot six times by a nine-millimeter weapon and died from his wounds. A Nokia cellular phone and a single athletic shoe were discovered at the scene.

Vasquez and Hampton spoke to Gonzalez, Gutierrez and Garcia after the shooting and described what had happened. They said that when Arambula came home, they used the stun gun and tried to grab him but he put up a struggle. Vasquez

4

dropped the nine-millimeter weapon during the struggle and Hampton picked it up and shot Arambula. Vasquez said he had dropped his cellular phone at the house and Hampton said he had lost one of his shoes.

The cellular phone was registered in the name of Vasquez's mother. Telephone company records showed that a few minutes before the shooting, several calls were made from that cellular phone to appellant's residence. There had also been several calls between the two telephone numbers during the previous year. Vasquez went into hiding and had not been located at the time of appellant's trial. Before he disappeared, Vasquez met briefly with appellant at a Black Angus restaurant.

Hampton met with his parents a few days after the shooting and told them what had happened. He showed them a wad of cash and said he had been paid $1,000. Appellant purchased a one-way airline ticket for Hampton to Austin, Texas and arranged for Hampton to stay with a friend of his. Hampton and appellant spoke on the telephone several times while Hampton was in Texas. Hampton was eventually apprehended but did not testify at appellant's trial.

Appellant and Donahoo flew to Mexico after the shooting. Appellant was arrested upon their return in August of 1998, and was interviewed by police. He denied knowing any details about Donahoo's former relationship with Arambula, but said he had noticed that she behaved strangely one day when they went to Arambula's restaurant. Later, a man appellant did not know approached him at a gas station, told him to watch his back, and mentioned that name "Felipe." Appellant wanted to find out what was going on, so he asked Vasquez to contact Arambula and set up a meeting. Appellant claimed he only wanted Vasquez to

tell Arambula that he wanted to talk to him; he did not want Arambula to be kidnapped or harmed in any way. When he learned about what had happened, he was frightened, so he gave $300 to Hampton and arranged for him to go to a friend's house in Texas.

A jury convicted appellant of murder, attempted kidnapping (§§ 207, subd. (a), 664), burglary (§ 459), assault with a stun gun (§ 244.5, subd. (b)), and false imprisonment by violence (§ 236). The jury also found true allegations that the murder occurred during the commission of a burglary and attempted kidnapping (§ 190.2, subds. (a)(17)(B) & (G)), and that appellant was armed with a firearm and had furnished a firearm to another during the commission of each offense except the assault with a stun gun (§§ 12202, subd. (a)(1)), 12022.4). The trial court sentenced him to life without the possibility of parole plus four years and eight months. We subsequently affirmed the judgment on appeal. (*People v. Vazquez*, *supra*, B135076.) In 2002, we summarily denied appellant's petition for a writ of habeas corpus in which he contended among other things that his appellate counsel had provided ineffective assistance by failing to challenge the special circumstance findings. (*In re Vazquez* (Apr. 3, 2002, B157027).)

Our Supreme Court's decision in *Banks* was issued in 2015, and *Clark* was issued in June 2016. In April 2017, appellant filed a petition for a writ of habeas corpus in the trial court alleging that the evidence was insufficient to support the special circumstance findings, i.e. that he was a major participant in the underlying felonies who acted with reckless indifference to human life. On May 9, 2017, Ventura County Superior Court Judge Ryan Wright issued a written ruling denying the petition

6

on the merits.[3]  We summarily denied appellant's ensuing Habeas petition.

In 2019, appellant filed a petition for resentencing under section 1170.95.  Because the trial judge who sentenced appellant had retired, the matter was assigned to Judge Anthony Sabo. (§ 1170.95, subd. (b)(1).)  In his petition, appellant reiterated his rejected habeas claim that the evidence was insufficient to support the jury's findings that he was a major participant in the underlying felonies and acted with reckless indifference to human life.  In opposing the motion, the People argued among other things that the jury's true findings on the felony-murder allegations categorically precluded appellant from obtaining relief under section 1170.95.

The trial court's ensuing order setting the matter for an evidentiary hearing made no mention of this request.[4]

In denying the petition the trial court stated that it reviewed the trial transcripts, our opinion affirming the judgment on direct appeal, the probation report, and appellant's habeas petition.  It found the evidence sufficient to support the special circumstance finding.  It stated that its task was to "examine[] the evidence to determine if, when viewed in the light most favorable to the verdict, each essential element of the crime was proven beyond a reasonable doubt."

## DISCUSSION

Appellant contends the order denying his section 1170.95 petition must be reversed because the trial court erroneously

---

[3] On our own motion, we take judicial notice of these court records.  (Evid. Code, § 452, subd. (d).)

[4] Section 1170.95, subdivision (c).

7

applied the substantial evidence standard of review in concluding the evidence was sufficient to support the jury's findings that he was a major participant in the underlying felonies and acted with reckless indifference to human life.[5]  In response, the People reassert their claim below that the jury's true findings on the felony-murder special circumstance allegations categorically preclude appellant from obtaining relief under section 1170.95.[6]  Although the jury made those findings before *Banks* and *Clark* were decided, the People contend that such findings are binding unless and until appellant succeeds in having them reversed through habeas proceedings.  The People also contend the court applied the correct standard of review in concluding the evidence was sufficient to support the special circumstance findings in light of *Banks* and *Clark*, and that the court did not err in so finding.

Our Supreme Court has granted review to decide whether a felony-murder special-circumstance finding made before *Banks* and *Clark* precludes a petitioner from making a prima facie showing of eligibility for relief under section 1170.95.  (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], rev. granted

---

[5] Appellant also contends that the court erroneously relied on the probation report in making its findings.  This claim was not raised below and is thus forfeited.  In any event, we do not consider the probation report in concluding that the evidence at trial was sufficient to support the jury's special circumstance findings under *Banks* and *Clark*.  (See *post*, at pp. 12-16.)

[6] We reject appellant's contention that the People forfeited this claim by failing to appeal from the trial court's order to show cause.  (*People v. Medrano* (2021) 68 Cal.App.5th 177, 182 [order to show cause under section 1170.95 is not an appealable order].)

Mar. 10, 2021, S266606.) Some courts have held that petitioners with pre-*Banks/Clark* special circumstance findings are not barred from seeking relief under section 1170.95 and are entitled to factfinding following an evidentiary hearing. (See *People v. Price* (2021) 71 Cal.App.5th 1128, 1147 (*Price*), review granted Feb. 9, 2022, S272572; see also *ibid.*, fn. 10, and cases cited therein, including *People v. Gomez* (2020) 52 Cal.App.5th 1, 16-17 (*Gomez*), review granted Oct. 14, 2020, S264033.) Others have held that a special circumstance finding made prior to *Banks* and *Clark* bars relief "unless and until the petitioner first obtains a ruling, on direct appeal or habeas corpus review, that the special circumstance finding is not supported by substantial evidence under the *Banks/Clark* standard." (*Price, supra,* 71 Cal.App.5th at p. 1147, fn. omitted; see also *ibid.*, fn. 9, and cases cited therein, including *People v. Smith* (2020) 49 Cal.App.5th 85, 95 (*Smith*), review granted July 22, 2020, S262835.)

A third line of cases provide that "'where a petitioner facing a felony-murder special-circumstance finding has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review by any court, [either] at the trial or appellate level,' he or she may seek resentencing under section 1170.95, but the resentencing court should undertake a sufficiency-of-the-evidence analysis 'at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of [section 1170.95].' [Citation.] Only if the resentencing court first determines the record of conviction does not contain substantial evidence to support the finding under *Banks* and *Clark* is the petitioner entitled to an order to show cause and an evidentiary hearing. [Citations.] If the resentencing court concludes sufficient evidence in the trial record 'meets the minimum threshold of personal culpability set

9

by *Banks* and *Clark*,' the felony-murder special circumstance finding will 'foreclose resentencing as a matter of law." (*Price*, *supra*, 71 Cal.App.5th at p. 1149, quoting *People v. Secrease* (2021) 63 Cal.App.5th 231, 261 (*Secrease*), review granted June 30, 2021, S268862, fn. omitted; see also *ibid.*, fn. 13, and cases cited therein.)

"The *Secrease* and *Gomez* lines of cases agree that 'section 1170.95, subdivision (c) cannot reasonably be read to permit a "do-over" of factual issues that were necessarily resolved against a section 1170.95 petitioner by a jury. [Citations.] Both lines of cases hold that *Banks* and *Clark* require substantial evidence review of a previous special circumstance finding made under section 190.2 before an individual can seek relief under section 1170.95. They disagree primarily on whether that review must be performed by an appellate court via habeas corpus or direct appeal or may be accomplished by a trial court considering a section 1170.95 resentencing petition. The *Smith* line of cases, on the other hand, interpret Senate Bill No. 1437 . . . as affording a new and different remedy to petitioners raising such a challenge, an evidentiary hearing under section 1170.95, subdivision (d), at which the parties may submit additional evidence and the People bear the burden of proof to show beyond a reasonable doubt that the petitioner is ineligible for resentencing, meaning that he meets one of the three criteria for murder stated in section 189, subdivision (e), which are the same as the special circumstances outlined in section 190.2." (*Price*, *supra*, 71 Cal.App.5th at pp. 1149-1150, fn. omitted.)

We agree with our colleagues in *Price* that "the *Secrease* and *Gomez* lines of cases have the better argument" on this issue. (*Price*, *supra*, 71 Cal.App.5th at p. 1150.) Senate Bill No. 1437

"'did not change any of the requirements for the special circumstance finding announced in *Banks* and *Clark*.' The remedy the *Banks* and *Clark* decisions provide for special circumstance findings is not an evidentiary hearing but a form of substantial evidence review." (*Ibid*.) We also "disagree with cases like *Smith* that posit that relitigation of special circumstance findings should be permitted under section 1170.95 because 'the jury did not have the same questions before them' in cases decided prior to *Banks* and *Clark* as in cases decided after them. [Citation.] There is no indication the questions put to the *jury* have changed as a result of *Banks* and *Clark*. '[O]ur Supreme Court has not required that juries be instructed on the clarifications, and in the wake of *Banks* and *Clark*, no mandatory language or material changes were made to the CALCRIM special circumstance instructions. [Citations.]" (*Price*, at p. 1152.)[7]

As we have noted, the *Gomez* and *Secrease* line of cases disagree on whether an individual seeking a *Banks/Clark* review must do so in an appeal or habeas petition (e.g., *Gomez*, *supra*, 52 Cal.App.5th at pp. 16-17), or may instead obtain such review at

_____

[7] After the parties appeared at oral argument, we deferred submission of the matter to allow them to submit supplemental briefs regarding the retroactivity of the amendments to section 1170.95 that went into effect on January 1, 2022, pursuant to Senate Bill No. 775. As relevant here, subdivision (d)(3) of section 1170.95 was amended to make clear that the burden of proof at an evidentiary hearing is proof beyond a reasonable doubt, and to more specifically set forth the type of evidence that may be admitted at such hearings. Because we conclude that appellant was not entitled to an evidentiary hearing, these recent statutory changes are irrelevant to our resolution of this appeal.

the prima facie stage of a section 1170.95 petition (e.g., *Secrease*, *supra*, 63 Cal.App.5th at p. 255).  The *Secrease* line of cases recognize, however, that review at the prima facie stage of the petition is warranted only if the petitioner "has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review by any court, [either] at the trial or appellate level."  (*Secrease*, at p. 255.) Here, appellant filed a post-*Banks*/*Clark* habeas petition in the trial court and Judge Wright issued a written ruling denying the petition on the merits.  Although the order did not cite to *Clark*, the *Banks* and *Clark* factors overlap.  (*Clark*, *supra*, 63 Cal.4th at pp. 614-615; In re *Loza* (2017) 10 Cal.App.5th 38, 52.)

        In any event, the evidence is sufficient to support the jury's true findings on the felony-murder special circumstance allegations.  (See *People v. Law* (2020) 48 Cal.App.5th 811, 822, review granted July 8, 2020, S2262490 ["Whether there is sufficient evidence that [an individual] was a major participant . . . who acted with reckless indifference to human life is a question we can decide on appeal"].)

        A "major participant" in a felony is one whose "personal involvement" is "greater than the actions of an ordinary aider and abettor to an ordinary felony murder."  (*Banks*, *supra*, 61 Cal.4th at p. 802.)  An individual acts with reckless indifference to human life when he or she ""'knowingly engag[es] in criminal activities known to carry a grave risk of death.'""  (*Id.* at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157 [95 L.Ed.2d 127].)  This standard "has a subjective and an objective" component.  (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)  To satisfy the subjective component, "'[t]he defendant must be aware of and

12

willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Ibid.*, quoting *Banks*, at p. 801.) The issue is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.) To satisfy the objective component, the risk of death ""must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him . . . , its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation."" (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

     *Banks* and *Clark* instruct that the totality of the circumstances should be examined when evaluating the extent of an individual's participation in an underlying felony and suggest several relevant but nondispositive factors to consider: (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins*, *supra*, 9 Cal.5th at p. 677, citing *Clark*, *supra*, 63 Cal.4th at pp. 618-623.) The court made clear, however, that "'no one of these considerations is necessary,

13

nor is any one of them necessarily sufficient.'" (*Clark*, at p. 618, quoting *Banks, supra*, 61 Cal.4th at p. 803.)

The record of appellant's conviction, when reviewed in light of the factors set forth in *Banks* and *Clark*, supports the jury's findings that he was a major participant in the underlying felonies who acted with reckless indifference to human life. Appellant was the mastermind of the plot to kidnap the victim in his home, hired Vasquez and Hampton to commit the crime, and provided them with weapons including a loaded firearm. Moreover, the crime was not a "garden-variety robbery" in which nothing pointed to an elevated risk to human life beyond those risks inherent in such an offense. (See *Clark, supra*, 63 Cal.4th at 617, fn. 74 [explaining that "a robbery in which the only factor supporting reckless indifference to human life is the fact of the use of a gun is what we meant by 'a garden-variety armed robbery' in *Banks*"].) On the contrary, appellant planned and orchestrated an ambush-style home invasion kidnapping of the victim by two men armed with a loaded firearm and a stun gun. As Judge Wright reasoned in denying appellant's habeas petition, "[appellant's] entire kidnapping plan relied upon the victim returning home while his accomplices were present. A conflict with the victim was inevitable, and [appellant] arranged for his accomplices to both be armed. [Appellant] failed to take any steps that would have diminished the grave risk of death, but instead, at every step, made choices that only increased the danger of violence and killing."

Although appellant was not physically present at the scene of the crime, he was on the phone with Vasquez while Vasquez and Hampton were inside Arambula's house and thus had the opportunity to direct their actions. Moreover, appellant provided

14

Vasquez and Hampton with a loaded firearm. The jury could thus infer that appellant intended for his accomplices to shoot Arambula if he resisted, and conveyed that intent to his accomplices by providing them with the loaded firearm. (See *People v. Williams* (2015) 61 Cal.4th 1244, 1281-1282 [defendant not physically present at scene who instructed carjacking accomplices to shoot any resisting victims was major participant who showed reckless indifference to human life].) Appellant's citations to *In re Taylor* (2019) 34 Cal.App.5th 543, and *In re Bennett* (2018) 26 Cal.App.5th 1002, are unavailing because the petitioners in those cases did not provide their accomplice with any weapons, much less a loaded firearm that was used to kill the victim. (*In re Taylor,* at p. 557; *In re Bennett,* at p. 1007.)

Although appellant notes there is no evidence he had any knowledge of his accomplices' propensity for violence, that the duration of his accomplices' interaction with the victim was relatively brief, and that his absence from the scene of the crime rendered him unable to aid the victim after he was shot, "'[n]o one of [the *Banks/Clark*] considerations is necessary, nor is any one of them necessarily sufficient.'" (*Clark*, *supra*, 63 Cal.4th at p. 618, quoting *Banks, supra*, 61 Cal.4th at p. 803.) The totality of the considerations supports the jury's finding that appellant was a major participant in the attempted kidnapping and burglary who acted with reckless indifference to human life. Accordingly, appellant's petition for resentencing under section 1170.95 was properly denied.[8]

---

[8] Appellant also cites *Enmund v. Florida* (1982) 458 U.S. 782, 795 [73 L.Ed.2d 1140] for the proposition that he could not be convicted of first degree murder as a matter of law because "it

15

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


I concur:


YEGAN, Acting P.J.

---

is undisputed that [he] neither committed the homicide, nor was present when the killing took place, nor schemed nor participated in a plot to commit murder." *Enmund*, in which the defendant was "the minor actor in an armed robbery" (*Tison, supra,* 481 U.S. at p. 149), does not support appellant's position. As the United States Supreme Court subsequently recognized, "'major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." (*Id.* at p. 163; see also *Banks, supra,* 61 Cal.4th at p. 800.)

TANGEMAN, J., Dissenting:

I respectfully dissent. The order denying resentencing pursuant to Penal Code section 1170.95[1] must be reversed because the trial court found that appellant acted with reckless indifference to human life based on a substantial evidence review of a jury verdict that predated the *Banks* and *Clark*[2] decisions rather than evaluating the evidence as an independent finder of fact.

Courts of Appeal have split on the question of reliance on pre-*Banks* and *Clark* verdicts, which is pending review in our Supreme Court.[3] The majority here follows the view that *Banks* and *Clark* are of no consequence in the context of section 1170.95. I conclude that those cases that reach the opposite conclusion are more persuasive.

Regardless of whether one concludes that our Supreme Court *modified* the requirements for first degree murder culpability based on a special circumstance finding, or merely *clarified* existing law when it decided those cases, one result is inescapable: the pathway to such culpability was *narrowed*. "While it is true that the language of section 189, subdivision (e)(3) tracks language that has always been a part of section 190.2, subdivision (d), *Banks* and *Clark* placed new limits on its meaning." (*People v. Secrease* (2021) 63 Cal.App.5th 231, 254, review granted June 30, 2021, S268862.) Thus, by any definition,

---

[1] Unlabeled statutory references are to the Penal Code.

[2] *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

[3] *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.] 2020 WL 7417057, review granted Mar. 10, 2021, S266606.

1

or under any analysis, fewer people were, and are, culpable for first degree murder after *Banks* and *Clark* were decided than before. The question posed here is whether appellant is one of them.

For those reasons expressed in *People v. Secrease*, *supra*, 63 Cal.App.5th at pp. 248-254, review granted, and *People v. Smith* (2020) 49 Cal.App.5th 85, 93-94, review granted July 22, 2020, S262835,[4] I am persuaded that a felony-murder special-circumstance finding predating the *Banks* and *Clark* decisions does not render 1170.95 petitioners ineligible for relief. Because the jury finding precedes *Banks* and *Clark*, "the factual issues that the jury was asked to resolve . . . are not the same factual issues our Supreme Court has since identified as controlling." (*Smith*, at p. 93.)

In cases where the trial court summarily denied an 1170.95 petition based on a pre-*Banks* and *Clark* special circumstance finding, the "better approach" is to remand to the trial court to conduct a "case-specific . . . 'analysis of the facts involved.'" (*People v. Secrease*, *supra*, 63 Cal.App.5th at p. 259, review granted.) Here, the trial court analyzed the facts at an evidentiary hearing. But the analysis was flawed because the court reviewed the jury's finding for substantial evidence rather

[4] See also *People v. Mejorado* (2022) 73 Cal.App.5th 562, 571, review granted Mar. 23, 2022, S273159; *People v. Wilson* (2021) 69 Cal.App.5th 665, review granted Dec. 22, 2021, S271604; *People v. Pineda* (2021) 66 Cal.App.5th 792, review granted Sept. 29, 2021, S270513; *People v. Gonzalez* (2021) 65 Cal.App.5th 420, review granted Aug. 18, 2021, S269792; *People v. Harris* (2021) 60 Cal.App.5th 939, 956-958, review granted April 28, 2021, S267802; *People v. York* (2020) 54 Cal.App.5th 250, 259-261, review granted Nov. 18, 2020, S264954.

than making an independent evaluation of whether the facts established reckless indifference to human life.[5]

The trial court adopted the standard of *People v. Edwards*, *supra*, 57 Cal.4th at p. 715, which provides that on appeal of a conviction, the appellate court "'review[s] the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" The court here employed the substantial evidence standard when it "examine[d] the evidence . . . in the light most favorable to the verdict." Specifically, the court found "[t]he jury *could have logically concluded* that the petitioner was being informed of exactly what was taking place," and "[i]t was *reasonable for the jury to conclude* that the petitioner was aware of what was taking place and the possible consequences of the crime with the supplied weapons." (Italics added.)

But "substantial evidence" is the wrong standard. Instead, the trial court must "act[] as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) Senate Bill No. 775 (2021-2022 Reg. Sess.) "[r]eaffirms that the proper burden of proof at a resentencing hearing under this section is proof beyond a

---

[5] The trial court posed the issue presented as follows: "In deciding on this petition, the court examines the evidence to determine if, when viewed in the light most favorable to the verdict, each essential element of the crime was proven beyond a reasonable doubt. This same standard also applies to challenges to the evidence where a special circumstance is found to be true. *People v. Edwards* (2013) 57 Cal.4th 658, 715."

3

reasonable doubt." (Stats. 2021, ch. 551, § 1(c).) As amended, section 1170.95 clarifies that at the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . . A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

Review of the jury's special circumstance finding for substantial evidence was prejudicial because the verdict preceded *Banks* and *Clark*. The error was not harmless because the evidence of reckless indifference to human life was not overwhelming. (See *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599, 607.) Although the finding was supported by evidence that appellant planned the crime and supplied the weapons, there was no evidence he was aware that other participants had violent propensities. Nor was he present during the commission of the crimes, or in a position to aid the victim.

In my opinion, the trial court erred when it denied appellant section 1170.95 relief based on a substantial evidence review of the pre-*Banks* and *Clark* special circumstance finding. I would therefore reverse and remand for a new evidentiary hearing on his eligibility for relief.

NOT TO BE PUBLISHED.


TANGEMAN, J.


4

Anthony J. Sabo, Judge
Superior Court County of Ventura
_____

Todd W. Howeth, Public Defender, William Quest, Senior Deputy Public Defender, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee, Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.